**David WARE**

v.

**George E. GARVEY.**

**Civ. A. No. 55–863.**

United States District Court
D. Massachusetts.

Feb. 1, 1956.

Frank M. Doyle, Springfield, Mass., for plaintiff.

Joseph E. Kerigan, Springfield, Mass., for defendant.

WYZANSKI, District Judge.

*Charge to the Jury* *

---

* The foregoing charge deliberately avoids a clear decision on the issue whether under Massachusetts law (which was here at stake), an officer arresting the driver of an automobile has, as a matter of law, the right to search the glove compartment (not some other part of the car) for the registration of the automobile. No Massachusetts state case bears upon the question; and even the federal authority upon the point in cases covered by federal law is unsettled. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; United

**74**

■ The Court. Mr. Foreman and Members of the Jury: This case brought by a citizen of New York against a citizen of Massachusetts, is before you because the Federal Court has jurisdiction over controversies between citizens of different states. However, for the most part the law which governs this case is the law of the Commonwealth of Massachusetts for the incidents which were the subject of this trial occurred in Springfield, Massachusetts, and I shall endeavor to state to you the applicable law of the Commonwealth of Massachusetts.

■ As a Federal Judge sitting in what is called a diversity jurisdiction case I am required to apply what I understand to be the law of Massachusetts. But so far as my personal conduct and authority goes in dealing with you, that is, the relationship between the Court and jury, I am governed by federal law. And federal law gives to the Judge the power not merely to instruct the jury with respect to the law, but, within his discretion, to analyze as fairly as he can the evidence. If he chooses to comment on the credibility of witnesses or the nature of the testimony, he may do so, but he is required to caution the members of the jury that whenever he, the judge, talks about the credibility of a witness or the judge's recollection of the testimony or any matter of fact, the jury is entirely free to disregard the judge. The jury is required to follow the judge on his statements of law, whether they be federal law or Massachusetts law. The judge may make a mistake. Indeed, it is expected that judges will occasionally make mistakes; otherwise there wouldn't be appellate courts. And all judges of any humility at all know that they make quite a fair percentage of mistakes.

Mr. Foreman and Members of the Jury, in this case I am going to give you a quite complicated charge. I feel that I must do this in order to cover all the points of law which arise in the case. I do not deceive myself into believing that when I get done you will be law students, able to recite accurately all the points of law which I have covered. I think, however, I can most precisely direct you now to focus on what is, I think, the core of the case. Needless to say, any single, simple statement of a complicated case omits a great deal. Every generalization means there is an omission of what is specific. Yet it will help you, I think, to follow everything I say if you will allow me, at the outset, to put to you a very broad generalization.

States v. Di Re, 332 U.S. 581, 584, 68 S.Ct. 222, 92 L.Ed. 210, and the note following the report of United States v. Di Re in 92 L.Ed. 221. Hence I deliberately left to the jury the whole problem of what is reasonable in the search of a car driven by an arrested person. It is my impression that this would have been the course of conduct followed in the trial courts of the Commonwealth of Massachusetts; but in this course of procedure I am neither buttressed by, nor undermined by, any specific ruling in the Supreme Judicial Court of the Commonwealth.

Since I was bound as a federal judge sitting in a diversity jurisdiction case to apply the law of Massachusetts, I did not feel controlled by the decisions in other jurisdictions with respect to arrests, assaults, and allied matters. Yet I was mindful that on those topics recent decisions of the Supreme Judicial Court of Massachusetts show a strong tendency to adopt principles laid down by the American Law Institute's Restatement of Torts. See, for example, Muniz v. Mehlman, 327 Mass. 353, 99 N.E.2d 37, citing and quoting Restatement, Torts, §§ 119 and 121.

Another point in the foregoing charge deserves comment—that is, the right of the plaintiff to recover on account of his mental suffering. Clearly he is not entitled to recover any more just because he is a Negro. But the jury is entitled to consider whether he *personally* and individually suffers more than an average man. In making this assessment the jury is entitled to draw an inference that he does suffer more because he is a Negro, just as it might derive an inference that a woman beaten by a police officer suffers more mentally because of the greater sensitivity which she *personally* has as a result of being a member of a sensitive sex. C. E. W.

This case involves the claim by the plaintiff, Mr. Ware, that there was an excessive use of force by a policeman, Sergeant Garvey, and Sergeant Garvey defends against that claim by saying that he was exercising reasonable means to make an arrest valid under the law or to keep in custody Mr. Ware, after an arrest validly made under the law. That is, the issue in the case, stated simply and not with the particularity that I am going to use later, is whether when he, on several occasions, struck Mr. Ware, was Sergeant Garvey exercising a reasonable degree of force in connection with a valid arrest in order either to arrest or to maintain in custody Mr. Ware.

You will observe that, as I have stated the case generally and as the pleadings make it absolutely clear, the problem is a problem of assault or, as it is sometimes called, assault and battery, which for present purposes you may regard as giving blows. This is not a case involving any charge of false arrest; this is not a case involving any charge of false imprisonment; this is not a case involving violation of any alleged constitutional rights; this is not a case involving driving under the influence of liquor; this is not a case involving drunkenness; this is not a case involving misbehavior or correct behavior in a lavatory in a gasoline station. All of these other things to which I refer do cut across the case at various points which are tangent to the main circle. The ultimate issue is merely in connection with assault and battery and you are going to be asked, at the end, to give a verdict only with respect to whether there was any excessive, unreasonable use of force which damaged the plaintiff, taking into account the rights both of the plaintiff and of the defendant who, as you know, is a sergeant in the Springfield Police Force.

Mr. Foreman and Members of the Jury, I do not, as you may have observed, customarily compliment counsel. I want very decidedly in this case to compliment counsel. I am not referring so much to their professional skill, which I think is evident enough. There is no more difficult case to try before a court and jury than the type of case to which you are now listening. Criminal cases, ordinary contract cases, present nothing like the emotional difficulty, and the test of a lawyer's character which this type of case involves, because you and I know—we can't help knowing that under the current of the law there run fairly deep passions here, some of which are perhaps unworthy and some of which are natural, and native to all of us. The lawyers have scrupulously stayed within the legal limits and presented this case with admirable self-restraint. I shall try, in my charge, also to stay within the limits of what is the precise set of problems before me. They are complicated enough without my getting into any political controversy of any sort.

And I hope that you members of the jury will, in your deliberations and in your vote, always remember that you are here as a petit jury, to try the particular facts in a particular case. You are not a grand jury making an inquest into the police force or into civil liberties or into some other general issue; your job is to do justice according to law. You are expected to consider the facts before you and apply the particular instructions of law which I give you and not to allow in your thoughts, if you can help it, and certainly not in your speech in the jury room or in your votes, the entrance of any foreign, improper consideration.

You, as you know, are the ultimate judges of the truthfulness of the witnesses and you will have to decide how far you believe one or another witness. You are, of course, entitled to take into account the arguments addressed to you by counsel. You are entitled to take into account any analysis I make of the facts, but no one can take from you your ultimate responsibility as to what is your recollection of the testimony, what is your appraisal of the witnesses and what is your verdict on the truth of the matter submitted to you.

In estimating the credibility of the witnesses you will, of course, apply

just those standards you would in ordinary life. If a man has an interest in a case he may be affected by his interest. If a man has superior education he may be able to describe with superior accuracy, or he may not be able to because he may have other reasons more complicated and sophisticated than plain men have with respect to describing plain events. You are to take into account how far his story is consistent with what he said before he was on the stand and with what he says when he is on the stand. You are to take into account his chances for observation, his sort of recollection and every type of consideration which you, in ordinary life, apply when you seriously try to estimate whether somebody is telling the truth.

▪ ■ Now, Mr. Foreman and Members of the Jury, you will, as you perhaps already know, take out with you when you go out the pleadings in the case, because that is the habit in this court room, and the written exhibits. You do not take out the oral testimony because it is not generally contemporaneously available, it not having usually been transcribed before you consider your verdict. There is no reason, as a matter of law, why you must prefer the written exhibits to the oral testimony. It is entirely up to you. And everything depends on your own recollection and appraisal.

When you take out the pleadings, they, you will remember, are not evidence; they are a summary statement of what the contentions of the parties were before the evidence was brought in, and in almost every case there isn't an absolute parallelism between the pleadings and the evidence. It isn't only because men claim more than they can prove, it is because often they really don't know until there is a careful examination and cross-examination what is the precise scope of their contention. Yet you may look at a pleading in order to see whether the claim now made is consistent with the claim earlier made.

▪ ■ Sometimes matters will strike you as a minor divergence. For example, in this case I think in the complaint the plaintiff says the assault occurred at 11 p. m. on October the 15th, 1954. Well, I don't suppose any of you thinks it took place at that time. Almost all the evidence is in an opposite direction and would indicate that any assault that occurred, occurred after midnight and therefore on the date of the 16th of October, 1954. But this is not a variation which is fatal; it is a variation you have a right to take into account in considering the consistency of the plaintiff's statement but that's all it really matters.

■ Now, you have heard reference in this case to answers to interrogatories and you will recall that, in advance of this trial, interrogatories were put. So far as I know and so far as you know, I think, they were put only by the plaintiff, Mr. Ware, to Sergeant Garvey. There is a right under the federal rules and there is, indeed, under state rules, to put such questions in advance of trial and the answers which are given to those interrogatories may or may not be read to the jury. They are admissible evidence. They aren't binding. They have the same force and effect as any other kind of testimony weighed by you.

■ You will remember that certain answers to interrogatories, for instance answer number 6 and answer number 12, were read to you while Sergeant Garvey was on the stand and was being examined by the counsel for Mr. Ware, Mr. Doyle. Now, you have a right to take into account those answers and you may consider them either on their merits as answers or in helping you estimate the accuracy and consistency of the witness, or for any other relevant purpose.

Now I am going to return to the very broad problems of law which are here presented, and I shall begin by stating propositions of law which I think are incontestable and which are, so far as I can see, not in any way a comment upon the facts or an analysis of them. And I am going to begin with certain sets of propositions of law which come from the Massachusetts Constitution, Massachu-

setts Statutes, and the Massachusetts Decisions.

Now, I am a federal judge and I don't purport to be a thorough expert in every aspect of the law of the Commonwealth of Massachusetts but I do have one advantage over most of you: I did go to law school and I know where to find some of the law. And I am going to begin by reading to you those provisions which have to do with the constitutional rights of the citizen, but let me, before I do this, again tell you that you are not sitting here as a constitutional jury, to decide a constitutional case. The ultimate issue which will be before you is whether the blows which admittedly Sergeant Garvey inflicted upon Mr. Ware were in excess of what was reasonable in connection with Sergeant Garvey's defense that he was making or had made a valid arrest, and that it was because there was resistance to that arrest and/-or an attempt to escape from custody that these blows were struck.

I shall begin with the constitutional provisions which come from Article 12 and Article 14 of the Constitution of Massachusetts which very broadly relate to problems of arrest, search and seizure. You will, in general, be familiar with these provisions because everybody knows, in the broadest way, about this kind of provision, which was first adopted in Massachusetts and only later added to the United States Constitution as a separate part of the Bill of Rights of the United States Constitution.

Article 12 of the Massachusetts Constitution says: " * * * no subject—" you can see how old that is, "no subject"; that is when they were subjects of the King of England, not when they were citizens of the United States.

" * * * no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

So you see that though you are not to be arrested ordinarily, you are subject to arrest according to the law of the land.

The second constitutional provision which I shall read to you has to do with the right of search and seizure and this is from Article 14 of the Constitution of Massachusetts.

"Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure; and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws."

Now, a layman might suppose that this says you never can be searched or seized except by a warrant, but that is not what is the law. The law is that some people can search you and seize you. I guess you all know that, but you probably don't know when and under what circumstances. But you will remember that Sergeant Garvey is a police officer and no one doubts that he has that authority which comes from being a police officer duly designated by the City of Springfield and empowered to act by the statutes of the Commonwealth of Massachusetts, by the ordinances and regulations of the City of Springfield, in order to secure the peace and safety of all within that area.

There is, first of all, this relevant statutory provision, and I am now reading from the Annotated Laws of Massachusetts, Chapter 90, Section 21. This is the provision of arrest which might or might not be relevant here.

"Any officer authorized to make arrests * * * * "

and no one doubts that Sergeant Garvey is such an officer—

"may arrest without warrant and keep in custody for not more than twenty-four hours, unless Sunday intervenes, any person operating a motor vehicle on any way who does not have in his possession a license to operate motor vehicles granted to him by the registrar, and who violates * * *."

notice the word "and"; it has to be without a license and who violates—

"any statute, by-law, ordinance or regulation relating to the operation or control of motor vehicles; and any officer authorized to make arrests, provided such officer is in uniform or displaying his badge of office conspicuously on his outer coat or garment, may arrest without warrant any person, regardless of whether or not such person has in his possession a license to operate motor vehicles issued by the registrar, if such person upon any way or in any place to which the public has the right of access, operates a motor vehicle after his license or right to operate motor vehicles in this state has been suspended or revoked by the registrar, or whoever upon any way or place to which the public has the right of access operates a motor vehicle while under the influence of intoxicating liquor, * * *."

Remember he must have his badge and show it, but then he has the right to do it without a warrant. I am continuing with the statute,

"or whoever uses a motor vehicle without authority knowing that such use is unauthorized, or any person who, while operating or in charge of a motor vehicle, shall refuse, when requested by such police officer, to give his name and address or the name and address of the owner of such motor vehicle, or who shall refuse on demand of such police officer, to produce his license to operate such vehicle or the certificate of registration for such vehicle for examination by such officer; and at or before the expiration of said period of time such person shall be brought before a magistrate and proceeded against according to law. An investigator or examiner appointed under section twenty-nine, may arrest without warrant, keep in custody for a like period, bring before a magistrate and proceed against in like manner, any person operating a motor vehicle while under the influence of intoxicating liquors, irrespective of his possession of such a license."

So you see, putting it very bluntly and briefly, that Sergeant Garvey, being an officer authorized to make arrests, would have had the right by virtue of the statute, even if he had no warrant (provided that it was perfectly clear to the person whom he was stopping that he was an officer and he had shown a badge), to arrest and hold anyone who was operating a motor vehicle while under the influence of intoxicating liquor, also anybody who, when requested, didn't show his registration as well as his license.

But that isn't all the authority that the police officer has; that is just part of his authority. Under the law of Massachusetts he has a general authority which derives from what is called the common law—that is the unrecorded law, and it goes back a very long way. In fact it used to be said "the mind of man runneth not to the contrary." It is said to go back at least as far as Richard I—indeed, further.

Now I am going to read from an Opinion written in 1951 by one of our finest Massachusetts judges, Justice Spalding, who was writing for a unanimous Supreme Judicial Court of Massachusetts, and there were present on this day Chief Justice Qua, Justice Lummus, Justice Spalding, and Justice Counihan. He

was dealing with a problem not very unlike the one before you, and this is a quotation from Muniz v. Mehlman, 327 Mass. 353, at page 357, 99 N.E.2d 37, at page 40, and following. Justice Spalding was talking about a peace officer. That is somebody exactly like Sergeant Garvey.

"* * * a peace officer, had the right without a warrant to arrest the plaintiff if he was drunk or if he was operating his automobile while under the influence of intoxicating liquor. But the right to make such an arrest for either of these offences exists if, and only if, the person arrested was actually committing the offence for which he was arrested. The law on this point is settled in cases involving arrests for drunkenness pursuant to the above mentioned statute. * * *"

Which you are not concerned with.

"And the rule is the same with respect to arrests without a warrant for breaches of the peace. In general the right of a peace officer to make an arrest for a breach of the peace committed in his presence is no greater than the right of a private citizen."

In the American Law Institute Restatement, which is a kind of codification prepared by lawyers and judges as to what they think the common law is, there was a comment which is referred to by Justice Spalding.

"'To create the privilege to arrest another [for a breach of the peace committed in the presence of the (arresting officer)], it is not enough that the (arresting officer)—whether a private person or a peace officer—reasonably suspects that the other is committing a breach of the peace. * * * If in fact no breach of the peace has been committed, a mistaken belief on the part of the (arresting officer), whether induced by a mistake of law or of fact and however reasonable, that a breach of the peace has been committed by the other, does not confer a privilege to arrest.'"

In this general area with respect to arrests by police officers, and assaults or beatings in connection therewith, we are very much helped by an analysis which we owe to Justice Holmes, which is a broad analysis on the whole law of torts or private wrongs. What we do is, we first look to see whether the plaintiff was hurt. And then we look to see whether the defendant had an excuse for hurting the plaintiff. And then we look to see whether, in spite of the excuse, the defendant used more force than he was really privileged to use because of his excuse.

That is, the first question is, was the plaintiff hurt, and the plaintiff has the burden of proving that. And the second question is, did the defendant have an excuse for hurting, and the defendant has the burden of proving that. And the third aspect is, in spite of the excuse which the defendant had, did he use more force than was reasonable in the light of his excuse, and the plaintiff has the burden of proving excess force.

Now, you will see that in the case before you the first problem is, was Mr. Ware hurt. There is not much doubt that he was hurt. There is some doubt as to how much he was hurt. It is agreed that he was hit on the back of his head, and you will remember that it is by no means agreed that he was hit in the mouth and that his tooth was broken, and the plaintiff has the burden of persuading you of the extent of his injury. There is no doubt there were injuries; that is admitted. But the problem of how much they were the plaintiff must prove.

Now, the next question is, was there an excuse, and the defendant says there was an excuse: "I was in the course of arresting Ware for very good reasons and I was acting under the law and there was resistance to the arrest and there was an attempt to escape from custody." And I shall go over this more carefully shortly, but you realize here the defend-

ant has the burden of proof, being, of course, helped by the statute that I read to you and the quotation from Justice Spalding that I read to you.

Even if the defendant has persuaded you that on the whole, by the balance of probabilities, he had an excuse, nonetheless the plaintiff can come back and say, "There was a privilege to inflict some restraint upon me," but what the plaintiff says is—and I am not intending to say I agree or disagree with the plaintiff,—the plaintiff says, "What the defendant did is far beyond his privilege, that it was too severe and unreasonable a beating" and on this issue the burden of proof is on the plaintiff again to show the abuse of the privilege. And these three matters have to be taken up each in turn by the jury in dealing with this problem.

█ Moreover, if you do reach the question of damages, the burden of proof on the damages, like the burden of proof on the injury, is upon the plaintiff.

█ You will notice I used the phrase "burden of proof" several times in the last paragraphs. The burden of proof here is not a criminal burden of proof, beyond a reasonable doubt. The burden of proof means the probabilities, everything considered, taking into account all the evidence. What is the more likely story, in your judgment?

You will remember that there are two separate assaults which are here at stake. There might be more, but there are two that are referred to in the pleadings. One was the one which occurred perhaps a mile and a quarter from the gasoline station down south on Columbus Avenue when there was the first altercation, and when, as you will recall, Officer Weldon reached into the glove compartment to procure the permit or registration and, as you will recall, Ware jumped on him and then Sergeant Garvey struck Ware. The second assault, and they are separate problems, occurred perhaps at the same place but nothing is especially relied upon in regard to that. And the second assault with which you

are concerned occurred at the police station which was after the black Chevrolet car had arrived at the police station and after Sergeant Garvey had gotten out of the front seat and after Ware had gotten out of the back seat, and when, according to Sergeant Garvey, Mr. Ware was about to strike him with a partly filled bottle of whisky and in order to avoid that, a blow was struck, or a series of blows, by Sergeant Garvey. So there are two separate assaults.

Everything I have said to you up to now I think has been an instruction of law with only so much comment on the facts as was necessary in order to illustrate what were the principles of law. Now I am going to exercise what I regard to be my duty as well as my privilege as a federal judge in a very complicated case. Maybe you know that I don't always exercise this privilege. But my view is that when a case is extremely complicated the jury is entitled to the benefit, if it be a benefit, of the analysis which an experienced judge can give them of the facts. But I repeat my caution in the most emphatic terms that I can: that from now on everything that I say, except when I specifically state that I am setting forth a proposition of law, you may disregard. You, Mr. Foreman and Members of the Jury, are the jury and I am not, and I have no right to find the facts. I do have a right to help you in a preliminary analysis, provided I am fair about it, and I am trying to be fair about it. I do not say I will say as much on one side as on the other because fairness is not necessarily an even balance in the scales of justice. If you will look at the scales of justice the next time you see them in sculpture, you will observe that one pan is lower than the other.

█ Now, let me begin by telling you about the circumstances at the gas station as they appear to me on my recollection, which you are not required altogether to believe. You are not required to believe it at all. Mr. Ware and Mr. Johnson drove into the gas station, according to their testimony, and, accord-

ing to the testimony of Mr. Lyon, who was the operator, and apparently the owner of the gas station—at any rate, the attendant on that night,—the way that they conducted themselves, in the opinion of Mr. Lyon, indicated that they had had too much to drink. He thought they were unsteady in their gait and spoke with muffled voices. He had the impression that they had better not drive any more. And Johnson, in going to the ladies' room when there was a men's room, certainly acted as though he were not prudent and sensible.

So you start with some evidence that Mr. Ware and Mr. Johnson had had something to drink and, indeed, they admit they had had something to drink. They admit that between them they had had a third of a pint, and Ware says he had a third of a third, or a ninth of a pint, in five hours' journey from Rome, New York, towards Springfield. Of course the defendant says that they had had much more to drink and, according to one of the witnesses, there was about one inch left in the bottom of that pint bottle of whisky.

But you will remember that, though you are entitled to take into account this testimony of Mr. Lyon—and this is of some importance, what I am going to say to you now,—Sergeant Garvey did not know of this incident at any time prior to the booking at about 1:30 or 1:45 a. m. on the 16th of October, 1954. He could not have acted with reference to anything that happened at the gas station because he didn't know about it. Neither did his companion, Officer Weldon, at the time of the booking, or earlier. So the only basis for considering this evidence of what happened at the gasoline station is if it helps you make up your mind as to what was the actual state of intoxication, or lack of it, on the part of Mr. Ware. Remember, you can consider it in order to determine whether, in your judgment, Mr. Ware was or was not under the influence of liquor but also remember you have an advantage which Sergeant Garvey did not have at the time of his arrest.

Now, what is the second fact? The second fact is that Mr. Ware and Mr. Johnson took their truck, or car, out of the gasoline station and headed south on Columbus Avenue. It is the testimony of Sergeant Garvey and Officer Weldon that as they came out of that gasoline station the lights were not on and, although there were three different versions given to you of the speed with which they came out of the gas station, the testimony would indicate either 20 or 25 or 30 miles an hour, and perhaps accompanied by a roar of motors. At any rate, this was observed by Sergeant Garvey and Officer Weldon and they turned their vehicle around. They were proceeding in a black Chevrolet north on Columbus Avenue and, seeing what happened, and, for no other reason that we know of, they made a U turn and followed. Now, according to their testimony, although they followed, it was a mile and a quarter from the gasoline station before they finally came abreast of Mr. Ware's car, and one of the witnesses, you will recall—I think it was Officer Weldon—thought that the police cruiser was going at about 65 miles an hour and the plaintiff's, Mr. Ware's, car was going at 45 miles per hour. At any rate if it was a chase, and it is up to you as to whether it was a chase or whether it was just a slow passage along Columbus Avenue in Springfield, it was a mile and a quarter before the incidents which give rise to this complaint occurred.

At a point on Columbus Avenue where the cruiser drew abreast of Mr. Ware's car you will remember that Sergeant Garvey, according to his testimony, was sitting on the right and Officer Weldon was sitting on the left. Officer Weldon flashed his light, flashlight, and, as I recollect the testimony, told the parties in the truck to dismount; and they got out. They didn't know whether they were police officers or hijackers, but I guess they were sensible enough to conclude that they had better get out.

When they got out, you will remember the testimony, I think the uncontradicted testimony, is that there was talk be-

tween Ware and Garvey and there was talk between Weldon and Johnson. Sergeant Garvey asked for the papers, asked Ware, and Ware produced his operator's license. Now, at this stage something happened. Without any permission being given by Ware, Officer Weldon, according to my recollection, went to the glove compartment and seized from it the permit. Officer Weldon was under the general direction of his superior, Sergeant Garvey. There is no indication that Sergeant Garvey gave him the order to go, but Sergeant Garvey was there and did nothing, and Weldon went. Neither Sergeant Garvey nor Officer Weldon had in his possession any search warrant.

At that moment the first question is, was Mr. Ware under arrest at that moment? Of course he had been stopped. Did he know that he was being stopped by a police officer? Did he know that he was being arrested? This is a question of fact, but I think you may be helped if I read you what is now a quotation from the Massachusetts law, Massachusetts General Laws, Chapter 263, Section 1.

"Whoever is arrested by virtue of process, or whoever is taken into custody by an officer, has a right to know from the officer who arrests or claims to detain him the true ground on which the arrest is made; and an officer who refuses to answer a question relative to the reason for such arrest, or answers such question untruly, or assigns to the person arrested an untrue reason for the arrest, or neglects upon request to exhibit to the person arrested, or to any other person acting in his behalf, the precept by virtue of which such arrest has been made, shall be punished * * *."

Of course that last part has nothing to do with this case. So you have to ask yourselves whether this search was incident to an arrest. Now, even if there was an arrest, would the search have been warranted, justified?

▮ The general rule of law is that there is no right to search an automobile without a warrant, either before or aft-

er the arrest, if such arrest was not justified. Of course if the arrest was justified and in the car there might have been, for example, a weapon, then you have a right to look for the weapon. But you have a right to take into account what all the circumstances were here.

▮ Now, if you conclude that it wasn't a reasonable search or there wasn't a reasonable arrest or anything like that, you then have the problem of the conduct of Mr. Ware. Mr. Ware didn't file suit forthwith in the District Court. He pounced upon Officer Weldon. Now, if in your judgment, and only if in your judgment, there was no valid arrest and no rightful search, the owner of the property or the person in charge of it has a right to use reasonable force to keep hold of his property. Of course it would be unreasonable if he had taken a gun and shot Officer Weldon. But if in your judgment the arrest hadn't taken place and there was an unauthorized search, then the owner had the right to use a reasonable degree of force to prevent the opening of his glove compartment and the rifling of his papers.

▮ If, and I say only if, you come to the conclusion that Ware was acting properly, then there was no right to interfere with him. Nothing wrong had been done and any blow struck at that moment would have been improper, no matter who struck it, whether it was Officer Weldon or Sergeant Garvey. Sergeant Garvey, even if he had the right to strike a blow, of course had the right to strike only such blows as were necessary and reasonably proper, so that you have to deal with this double problem, which I have already indicated to you, whether there was authority to strike the blow and, if there was authority, whether there was any abuse of the privilege.

Sergeant Garvey says in the middle of his scuffle, or standing apart, he said, "You are under arrest". Well, you ought to consider whether that was said, whether there was a display of authority, and whether, in the light of all the circumstances, arrest at that stage would

have been proper. And looking at that you will of course recall that when they got into a scuffle they were pretty near one another's mouths, and whatever may have been the situation, before, Sergeant Garvey would have had a pretty good chance to estimate what was the situation. He might also have had a chance to estimate it earlier by the talk and walk, so that he may have placed Mr. Ware under arrest earlier, or he may not. As I remember his testimony, he didn't even claim to have made any arrest until the scuffle began, but that's up to you and you can look to all the facts, and I am not trying to tell you how to decide it.

Well, at any rate, by the time the scuffle was over all the parties, I think, must have known that there was an arrest because you will realize by that time handcuffs had been put upon Ware by Sergeant Garvey. Later they were removed, you will recall, because Mr. Ware thought they were uncomfortable and Sergeant Garvey indicated that if Mr. Ware would behave there would be no need of the handcuffs.

■ But now, for what was the arrest? Of course the arrest may have been for driving while drunk, and there was surely evidence by this time which, whether or not it was sufficient, would create a reasonable doubt, because by then Sergeant Garvey knew not only the breath of the men but he knew of the presence of the bottles which had, by that time, been transferred from Mr. Ware's car into the cruiser. It may have been that the arrest was for assaulting an officer. Well, whether that was a valid ground depends upon whether or not it was a reasonable resistance of a search and seizure, and I haven't decided that; I have left that to you.

But what if the arrest was for neither of those grounds, but for a felony? No felony had been committed and there was no evidence of any felony or any evidence to create a reasonable doubt as to a felony. You will recall that in the answers to the interrogatories which were read to you, Mr. Garvey gave as his reasons for the arrest drunkenness, the lack of lights—though he admits that the lights were turned on before the mile and a quarter point had been reached—the assault on the officer, the rate of speed, et cetera. I will read you the exact answers so that we don't have any problem here.

The Interrogatory No. 6 which was put to him, which is,

"What was or were the violations of law that the plaintiff was committing when placed under arrest by the defendant?"

"Speeding, operating a motor vehicle without lights, drunkenness, assault on a police officer, driving while under the influence of liquor."

Now, you notice the question doesn't ask him, "Why did you arrest him?" The question was, "What were the violations?" and he answers what the violations were.

But now (the Court then turned to the stenographer) I am going to ask you (meaning the stenographer) to read that portion of the testimony, which is the testimony on the examination of Sergeant Garvey while he was on the stand. Will you read the last part that—

"Court Reporter Keany. I wrote those up for you.

"The Court. Thank you very much, indeed. Now,—if you leave all the copies of this (you can give both parties copies)—you don't have to stay any longer. Thank you."

The Court Reporter took down this when she heard the testimony yesterday morning:

"Q. I want to find out what was said by you to the sheriffs to hold Ware at the police station, or what was done by you. So far I have the impression, which may be incorrect, that Ware was booked on suspicion and you said nothing more definite, but I don't believe I gave you full chance to say what you told the police officer who, booked him. A. I booked him, sir.

"Q. Did you say anything? A. To the booking officer?

"Q. Yes. A. No, sir.

"Q. So all you said at that time was 'Book him on suspicion.' A. Yes, sir.

"Q. Clear like that? A. To the booking officer?

"Q. Yes. A. Yes, sir.

"The Court. That is all I want to know."

Then a little later, and this is the Court, myself, putting the questions,

"Q. Now, as I understand your answer to Interrogatory No. 6, you say you saw Ware at the time of his arrest engaged in certain violations, not as serious as murder, but violations of law, and yet you booked him not for those violations but on suspicion, and you are asked to explain why the booking is different from the observations. A. It is going to be a very hard question to answer, but I will try to please everybody in my answer.

"Q. You cannot please everybody, but tell the truth. A. It is procedure, sir, and there is no doubt in my mind but what it is legal.

"Q. You can not tell us what the reasons were, but don't tell us about the law. A. These violations that had been committed, that he is talking about, were in my estimation minor. There was nothing—well, they were minor. They were minor violations but due to his actions at the time we had stopped him, until we finally got him into the cell block, he had made an attempt to escape. He wouldn't—

"Q. Wait a minute. When was the booking? A. After this.

"Q. After the attempt to escape? A. Yes, sir.

"Q. Sure about that? A. I am positive, sir.

"Q. Are you very sure? A. Sir, I am positive.

"Q. All right. A. The way he had acted. His refusal to answer questions. His attempt to escape. I actually thought that the man must be wanted for felony somewhere. We—

"Q. The 'we' we don't care about. Tell us what is in your mind. A. It is in my mind because I was the deciding factor there. I decided that this man, due to his actions and so forth, more than minor, was wanted for something. I decided to hold him for investigation. I made a complete report of all the minor violations that this man had committed. If anybody on days had wanted to—I can say this—

"Q. You just tell us about your reasons. A. When I book a man for suspect, it is procedure not to throw all the other lesser charges against him. If they had seen fit in the morning, it wasn't specifically up to me—I have supervisors—they might have placed these other charges against him and I would have gone to court, but I thought most of these other actions were due mainly to drinking. I had not been hurt in the assault. Mr. Ware was. If he wasn't wanted for anything, which it turned out he wasn't wanted for felony, I couldn't see anything wrong with booking him for drunk and charging him with drunkenness in the morning. It was all concerned with drinking. That is what started it. I had in mind a much more serious charge. I thought the man must be wanted for felony. That is why I held him for suspect, but I didn't place these lesser charges on him at the time, but if my superiors had seen fit to do so, I would have gone to court on the complaints.

"Q. If I understand you correctly, and if not, you tell me; you say you booked him on suspicion of having committed a felony? A. Yes, sir.

"Q. You didn't book him on anything else? A. No, I booked him

on suspicion. I thought he must have been wanted some place else.

"Q. I want to make it clear—you booked him on suspicion of having committed a felony you had not observed? A. That is right.

"Q. And of which you had no evidence? A. No, sir."

Well, now, that is not all the evidence in the case and it isn't ever quite right to look at one particular thing and over-emphasize it, but you have to deal with the problem of why that arrest took place. Did it take place because of driving while under the influence of liquor? Did it take place on account of his not having his lights on? Did it take place on account of his speeding? Did it take place on account of an assault? Or did it take place on the basis of a suspicion of a felony that never had been committed and of which there was no evidence? For, if the arresting officer, in his own mind, acted upon a groundless basis, the arrest was invalid. The fact he might have had another good reason but didn't intend to use the other good reason is no excuse for arresting for the wrong reason, if the wrong reason was the motivation.

Now, this is very important, because if Ware was properly arrested, of course he had no right to escape, but what if he was wrongfully arrested? And he was held in custody without any authority and contrary to law? He felt like any other man under those circumstances. Being wrongfully apprehended by a man without authority, he had a right to escape and to use reasonable force to escape, including whatever you think to be reasonable. Now, if he raised his hand and had a bottle in it and decided to use that as a weapon, it is up to you whether that was reasonable and whether he had a right to do it. I am not going to try to tell you. Even if he had no right to raise the bottle, was excessive force used to subdue him? That is the same question again, if Sergeant Garvey did have the privilege, under all the circumstances was the privilege abused?

Now, you will notice that in the account I have given you of my analysis of the evidence I have only very incidentally referred to the toilet scene because, as I told you, that wasn't known to Sergeant Garvey before he booked. It is only valuable to you in helping you to estimate whether Mr. Ware was drunk.

I haven't said anything about the plea of guilty the next morning in the Springfield District Court, sometimes called the Police Court. You will remember that all the events which had to do with the assault and battery took place before that plea. The events in the court room on the 16th of October aren't helpful directly, but they are of some indirect help, perhaps. And the defendant, Sergeant Garvey, says, "Well, of course he was drunk; he admits he was drunk." Now, an admission by a man as to his conduct is always relevant, and you may consider it. But you may also consider the circumstances of the admission. Now, I don't know—I wasn't in the cell, and I can't tell you what went on. There are two quite conflicting stories and I am not trying to tell you which is right; I don't know. It is up to you to decide it. But you will remember that Sergeant Fitchett, the last witness except the plaintiff on rebuttal, said that he talked in the cell and he said he didn't give him any advice about how Mr. Ware should conduct himself; that he talked about what had happened but he didn't advise him how he should proceed the next day in the police court. On rebuttal the plaintiff, Mr. Ware, said that the Sergeant and Williams told Ware to plead guilty to a charge of what he called "public intoxication", which, as the cross-examination brought out, was certainly not the specific charge. The specific charge, as the exhibit makes plain, was "intoxication".

Mr. Ware says, "The Sergeant told us to plead guilty to public intoxication and the case would be dropped if that was done." At least that is my recollection; you are not required to follow it. There

is not much doubt there was a plea of guilty. There is not much doubt that the case was filed. If you look at the exhibit before you, you will see it was filed; that is, no sentence was imposed of imprisonment or fine.

Well, if you have reached the conclusion that either one or both of these assaults was either unauthorized by law or was excessive and beyond what was necessary—by "necessary" I mean reasonable, because, remember, hindsight about these matters is not very good. What counts is allowing a good deal of latitude for judgment to a policeman. A policeman is like an officer on the firing line; he isn't somebody who sits around like you and me in the court room and deliberates on the basis of the evidence after two or three days. He has two or three seconds, and he must act. Did he, if he had the right to act, use force which was, under all the circumstances for a man in his position as an officer of the law, guarding the peace and security of the community, excessive beyond what was necessary in connection with a valid arrest or the maintenance of custody after a valid arrest?

■ Now, if you find that there was a violation of the rights of the plaintiff, he is entitled to damages. There is no proof whatsoever of any hospital or medical bills and, though they are referred to in the complaint, you may not award one penny for hospital or medical bills. There is no proof of loss of earning power and you may not award one penny for loss of earning power. There is evidence, which you are entitled to consider, of physical and mental pain and suffering. Physical and mental pain and suffering is a subjective factor, as well as an objective factor. Some men suffer more than others from the same kind of blow. And anybody who unlawfully strikes another takes the risk of what is the state of body and state of mind of the man who strikes.

■ Now, this is a very delicate point, and I hope you won't misunderstand. The state of body of the man who has a heart attack is such that if he is struck by a blow he is likely to suffer more than one in perfect health. And anybody who makes a grievous, unprovoked, unwarranted assault upon a man with a heart attack takes the risk of his victim's state of body. If a man belongs to a peculiarly sensitive group or class, he may suffer more mental pain, not loss of reputation but mental pain. This is the risk you run. And in my instruction on that I preserve an exception on behalf of the defendant, but I am clear that that is the law, and if I am wrong it will be corrected on appeal.

■ Mr. Foreman and Members of the Jury, you are not to take into account the financial circumstances of the defendant; those aren't relevant. But you are to remember that this is not a case for you to be vindictive or passionate or to try, by some verdict, to set a great mark that will go down in civil liberties history, or something of that sort; that would be vastly improper. You are to measure, as precisely as you can, and it is terribly difficult, damages, if you reach the problem of damages. Every judge has to instruct you on the question of damages as well as of liability, but it doesn't mean that the judge thinks that there is liability or that you ought to find damages; that is up to you.

Now, Mr. Foreman and Members of the Jury, when you go out you will have two forms of verdict. One is a verdict for the plaintiff and the other is a verdict for the defendant. And if you find for the plaintiff you will fix the number of dollars and cents, and sign your name. If you find for the defendant you will just sign your name. You will tear up the form you don't use.

Now, Mr. Foreman and Members of the Jury, you are engaged in a matter of high concern. The last thing in the world for you to do is to go out of here and each of you write down on a piece of paper what you think ought to happen to this case, and add them up and divide by 12 and find out how many zeros there are, and so forth. That is plainly wrong. I can't control you when you get into the

jury room, but I have a feeling that if you act as well as the lawyers acted in this case, as rationally, as devoid of emotion, as mindful of the law and the facts, as you remember them, you will be able, with relative speed and ease, to arrive at the unanimous verdict which we contemplate.

Needless to say, there will be differences among you. As you approach a problem of this sort, remember that the jury system depends upon unanimous verdicts. Men are expected to exchange their views and often to start from different premises, to listen attentively to their colleagues, but not in the end to be obstinate about points which can be reconciled. Of course, if you get to a point where there is a real difference of conscience between you and your colleagues, stand on your conscience. But make mighty sure it is your conscience and not your stubbornness.

Is there anything else?

[Conference at the bench:

"Mr. Kerrigan. Requests for Ruling?

"The Court. Yes.

"Mr. Kerrigan. There are certain ones I don't think your Honor has covered, perhaps unintentionally or perhaps you don't believe you should. Three, four, six, seven,—

"The Court. There is no issue of malice in this case. Abuse of privilege is, and I have covered that.

"Mr. Kerrigan. I think they have to prove there was constructive malice.

"The Court. I think I have covered that. I refuse to give number three. The next one—

"Mr. Kerrigan. Will your Honor save my exception?

"The Court. Surely; it is automatic in the federal court. Next?

"Mr. Kerrigan. And four.

"The Court. Well, I thought that was clear, but I will say it if you want me to. Do you want me to?

"Mr. Kerrigan. Yes.]

"The Court. The defendant would like me to say if the plaintiff resisted the defendant while the defendant was arresting him, that is, validly arresting him, the defendant had the right to use whatever force was necessary under all the circumstances, to effect the arrest, provided, of course, the arrest was under law."

[Further conference at the bench:

"Mr. Kerrigan. Number six.

"The Court. Denied.

"Mr. Kerrigan. Will you save my exception?

"The Court. Surely. It is done automatically.

"Mr. Kerrigan. Seven.

"The Court. I will give it in substance, but not exactly as you have it, and I will save your rights to the precise form of words you have used.]

"The Court. Of course if the defendant brushed up against the plaintiff without intending to assault or hit him and it was just an accidental blow, an accidental passing glance of his billy, that is no assault. The only kind of assaults which we are here concerned with are deliberate beatings or infliction of blows. And I must say on this I am clear you can act on anybody's evidence and reach the same result."

[Further conference at the bench:

"Mr. Kerrigan. Save my exception to seven? Eight.

"The Court. No. Your rights are preserved.

"Mr. Kerrigan. Nine.

"The Court. No. I think I have covered it.

"Mr. Kerrigan. Exception.

"The Court. Yes.

"Mr. Kerrigan. Ten?

"The Court. I have covered it as well as I can.

"Mr. Kerrigan. Exception. Eleven?

"The Court. I have covered it as well as I can, and I don't intend to cover it again. Thank you.

"Mr. Kerrigan. And if your Honor will save my exception to that part of the charge in which you stated that the man belongs to a peculiarly sensitive race or class. I don't know whether the word was 'man' or 'the plaintiff'. But substantially this: that he may suffer more mental injury—that, I want to take exception to.

"The Court. That was preserved. I will be glad to do it again.]

"The Court. Mr. Foreman and Members of the Jury, lunch will be served to you at about one o'clock. When you hear a knock at the door, that will mean you are being taken down."

[The jury retired at 11:30 A. M.]

[At 5:15 P. M. the jury returned a verdict for the defendant.]