Hector SANTIAGO, Plaintiff, Appellant,

v.

Paul J. FENTON, etc., et al.,
Defendants, Appellees.

No. 89–1108.

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1989.

Decided Dec. 11, 1989.

---

Elizabeth O'Connor Tomlinson and Charles J. DiMare, with whom Joan A. Antonino and Antonino & DiMare, Amherst, Mass., were on brief, for plaintiff, appellant.

Edward M. Pikula, Asst. City Sol., with whom Jane M. Payne, City Sol., was on brief, for defendants, appellees.

Before BREYER, Circuit Judge, COFFIN, Senior Circuit Judge, FAIRCHILD, Senior Circuit Judge.*

* Of the Seventh Circuit, sitting by designation.

COFFIN, Senior Circuit Judge.

Plaintiff Hector Santiago claims that the City of Springfield, Massachusetts, its police chief and three police officers violated his constitutional rights by forcibly arresting and repeatedly striking him after he threw a snowball that hit a police officer's unmarked car. Santiago brought a civil rights action alleging violations of 42 U.S.C. § 1983, Mass.Gen.L. ch. 12, § 11I, federal and state constitutions and state common law. He ultimately prevailed at trial against one officer on one claim.

Santiago alleges three errors to this court. First, he claims that the district court abused its discretion by granting an overly broad protective order that prevented him from obtaining effective discovery. Second, he argues that the court erred in granting summary judgment for the city and the police chief because sufficient facts had been alleged and supported to create a genuine issue of material fact. Third, appellant claims that the directed verdicts for one of the defendant police officers should not have been granted because the facts taken in the light most favorable to the plaintiff would have supported a reasonable jury's finding of liability. We will address each of these claims in turn, but first sketch the factual context.

## I. *Facts*

The underlying facts of this case concern a January evening in 1983. The events we narrate were generally the subjects of widely conflicting testimony but our account will, as it must in reviewing the summary judgment and the directed verdicts, state those facts in the light most favorable to the appellant. *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988); *Kinan v. City of Brockton*, 876 F.2d 1029 (1st Cir.1989).

On the night in question, Hector Santiago, age 13, had been engaged in a snowball match with several other youths when he accidentally threw a snowball that hit the unmarked car of Springfield police officer Rivera, not causing any damage. Rivera stopped and Santiago and the other youths ran to a nearby apartment complex, not realizing at first that the driver was a police officer. Rivera ran after them for about ten feet, but then abandoned the chase. He later encountered the youths at the complex and overheard Santiago say that he had thrown the snowball, but had not intended to hit the car. Rivera grabbed Santiago by the coat, causing his eyeglasses to fall and break. He yelled that it was his car that was hit and told Santiago that he was in "big trouble." Rivera then identified himself as a police officer.

Rivera dragged appellant into the hallway of one of the apartments and repeatedly pushed and shoved him against a wall. The officer then knocked on several residents' doors, asking that the police be telephoned. Shortly thereafter, detectives Carelock and Mackler arrived. After some discussion, the officers informed Santiago that he would have to go with them to check the vehicle for damage. He refused, indicating that his stepfather was coming. Officer Mackler grabbed him by the jacket collar and pulled him down two stairs, causing him to fall. The officers held him face down and handcuffed him. Santiago was then led to a police car while the officers made jokes about him. He was thrown against the police car and punched in the back several times. The police officers then escorted Santiago to the police station, disregarding the arrival of his stepfather. While in the car, Officer Mackler repeatedly struck him in the face while yelling at him and calling him names. At the station, Santiago was searched and booked on a misdemeanor charge of being a disorderly person.

The officers unambiguously testified that Santiago was not arrested for throwing the snowball. They claimed that Santiago was arrested for striking or pushing Rivera while refusing to accompany the officers, and for using abusive and offensive language. The complaint also indicates that the violent conduct and abusive language were the acts for which Santiago was charged. In their brief, however, defendants argue that the snowball incident *could* have given them probable cause to

arrest Santiago. We will address the implications of these differing scenarios at the relevant points in our discussion.

After being released from the police station into the custody of his stepfather, Santiago was treated at the local hospital. He had bruises on his lower back and left cheek as well as cuts on his left cheek. He was advised to rest in bed for a week. Three days later, he returned to the hospital for a second examination. For several days, Santiago had difficulty breathing and bending over and was forced to miss school and work. As the result of defendants' acts, Santiago experienced humiliation, anxiety and loss of sleep, and was emotionally and physically shaky for several months.

Santiago filed suit in July 1985. He alleged claims against officers Rivera, Mackler and Carelock for false arrest and imprisonment, malicious prosecution, abuse of process and federal and state civil rights claims. Count IX of his complaint alleged that the City and police chief were responsible for his injuries based on unconstitutional policies and customs related to the training and discipline of police officers.

During the course of discovery, defendants moved for protective orders in response to plaintiff's interrogatories and requests for police department disciplinary, civilian complaint and civil litigation records. After plaintiff's opposition, which did not include a supporting memorandum, the district court granted the protective orders. Appellant requested reconsideration, filing a memorandum of law, but that motion was denied.

In December, 1986, the City of Springfield, police chief Fenton, and officers Mackler and Carelock moved for summary judgment. In May, 1987, summary judgment was granted to the City of Springfield and police chief Fenton on count IX of plaintiff's complaint alleging unconstitutional custom and policy. Summary judgment was denied on the other counts.

The parties consented to try the case before a magistrate. At the end of the evidence, the magistrate entered directed verdicts for defendant Mackler on the claims of false arrest and imprisonment, malicious prosecution, abuse of process and state and federal civil rights claims. The remaining claim of use of excessive force went to the jury and a verdict against Mackler was returned. Damages were awarded to plaintiff in the amount of $1,500. An additional $1,500 was awarded on an earlier default judgment against defendant Rivera. Plaintiff and defendant Carelock had settled during trial.

## II. *Protective Orders*

The defendants requested protective orders in response to extremely broad discovery applications that sought police department records of internal investigations, disciplinary matters and civil litigation. In support of these requests, the defendants filed a memorandum asserting factual and legal reasons why the plaintiff's sweeping discovery should not be granted.

Three basic reasons were proposed. First, the defendants argued that plaintiff had so far failed to present any facts tending to implicate a de facto policy of the defendants, and examination of these voluminous records therefore was not relevant to any cause of action properly stated by the plaintiff. Second, defendants asserted that the discovery requests were so general that they placed an unwarranted burden on them. Third, the defendants argued that the matters being inquired into were privileged and needed to remain confidential to preserve the effective operation of the internal investigation unit.

The district court granted the motions for protective orders after allowing the plaintiff expanded time to file a memorandum in support of his opposition. For personal reasons, the plaintiff was unable to file that memorandum within the agreed period of extension. Although the plaintiff had obtained defendants' consent to an additional extension, the court, obviously uninformed of that agreement, ruled on the motions without benefit of the plaintiff's memorandum. The court stated that it granted the defendants' motions for protective orders

for the reasons and supporting law stated in [the] motion[s]. The plaintiff has filed opposition, but no material in support thereof.

In denying appellant's motion for reconsideration, the district court said:

The plaintiff has shown no factual basis for this request and now seeks to establish a factual basis for this allegation. Moreover, the wholesale examination of the records of this department will lead to a series of mini-hearings, and do not aid in the resolution of the straightforward issues presented here.

Before we begin our analysis, we reject plaintiff's contention that he was denied all discovery on his claim of municipal liability. We note that he received answers to numerous interrogatories, copies of the defendants' written policies and procedures, the internal investigation files regarding the instant incident, and deposition testimony from Mackler and the head of internal investigations. This is not a case in which discovery has been entirely denied on an issue that went to summary judgment. *See Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir.1976).

As a general matter, parties are entitled to broad discovery. Fed.R.Civ.P. 26(b)(1) states:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action....

This provision has been interpreted to entitle parties to discovery of any matter that bears on any issue in the case in the absence of privilege. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

■ We accept Santiago's arguments that the discovery sought here is generally

relevant to his claims of municipal liability. Relevancy, however, does not automatically entitle a plaintiff to discovery. Besides the explicit exclusion of privileged matters from the scope of Rule 26(b), "Rule 26(c) ... confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of 26(b)." Fed.R.Civ.P. 26, Notes of Advisory Committee on Rules, Subdivision (b) (1970 Amendment). *See In re Recticel Foam Corp.*, 859 F.2d 1000 (1st Cir.1988). In addition, in 1983, Rule 26(b)(1) was amended to expand district court judges' power to limit discovery requests.[1] *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir.1989).

■ This authority to limit discovery is within the trial judge's broad discretion in determining pretrial matters. *In re Recticel Foam Corp.*, 859 F.2d at 1006. While the court's discretion is not unlimited, *Williams v. City of Dothan, Ala.*, 745 F.2d 1406 (11th Cir.1984), "[w]e will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." *Mack*, 871 F.2d at 186.

■ Our reading of the district court's order is that, after weighing all three of the defendants' concerns and in the absence of a challenge to those concerns, the court decided that Santiago was not entitled to the broad discovery he requested. The decision did not rest on a finding that Santiago had failed to make sufficiently particularized allegations to state a claim for municipal liability. Nor did the court decide that all of the matters requested were privileged. The court merely ruled that the hardship alleged by the defendants when weighed against the absence of facts

1. The 1983 amendment added the following language:

The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c).

alleged to support municipal liability, even after some discovery, entitled the defendants to protective orders where the plaintiff had not challenged that hardship or limited his requests. We find that, given the facts and arguments before the court, it did not abuse its discretion in granting the motions.

In his complaint, Santiago made boilerplate allegations that Police Chief Fenton and the City of Springfield were aware, or should have been aware, of prior incidents of excessive force, false arrest and false imprisonment. He did not allege any specific facts beyond the immediate incident. In these circumstances, some courts have held that a claim will not withstand a motion to dismiss. *See, e.g., Rodriguez v. Avita*, 871 F.2d 552 (5th Cir.1989); *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir. 1985); *Scarpa v. Murphy*, 624 F.Supp. 33 (D.Mass.1985); *Smith v. Ambrogio*, 456 F.Supp. 1130 (D.Conn.1978). *But see, e.g., Berquist v. County of Cochise*, 806 F.2d 1364 (9th Cir.1986); *Holland v. Breen*, 623 F.Supp. 284 (D.Mass.1985). This court also has emphasized the importance of specific factual pleading. *Serrano v. Torres*, 764 F.2d 47, 48 (1st Cir.1985); *Dewey v. Univ. of New Hampshire*, 694 F.2d 1, 3 (1st Cir. 1982).

We need not decide, however, whether the plaintiff adequately pleaded a claim for municipal liability. We interpret the district court to have said that the plaintiff had been entitled to and had received some discovery on this issue and was not entitled to more without additional factual allegations. The court, however, appeared to draw support from the precedent we have cited regarding dismissal of a municipal liability claim in deciding that discovery should be limited.

In addition, the deficiencies in Santiago's complaint were compounded by his failure to challenge the factual and legal allegations made in the defendants' motions for protective orders. While we might find that the defendants exaggerated the need for confidentiality and the extent of the burden, the district court was not presented with any factual or legal reasons to doubt the defendants' claims, and therefore justifiably accepted them.

■■■ Appellant never proposed more limited discovery either in his original opposition or in his motion for reconsideration. He asserts that he was not obliged to do so because the burden of establishing a privilege is on the party seeking the protection of the court and, because privilege works in derogation of the factfinding process, the scope of privilege will be narrowly construed. *Von Bulow v. Von Bulow*, 811 F.2d 136 (2d Cir.1987). We do not find, however, that this creates a mandatory requirement on the district court to fashion limited protective orders where a party asserts a privilege. Rule 26(c) confers permissive ability to make such limiting orders. It does not require the court to make them, nor will we.

> Although judicial discretion is not unrestrained[,] ... parties have a correlative obligation to tailor interrogatories to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up.

*Mack*, 871 F.2d at 187.

We have no doubt that if the district court had been presented with more tailored requests it would have engaged in the particularized weighing of the harms of the asserted privilege against the need to do justice in the case and would likely have denied a blanket protective order. Where the party has not asked the district court to act, we will not say there was abuse of discretion. *Patrick v. Burget*, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988); *Martin v. Reynolds Metals Corp.*, 297 F.2d 49 (9th Cir.1961).

Santiago was in possession of facts from Mackler's deposition which, if brought to the attention of the district court at the time, might well have inclined the court to allow further discovery. These facts included: (1) that Mackler had received an earlier civilian complaint alleging similar conduct to the instant case, (2) that he did not recall receiving any training in constitu-

tional law issues, (3) that he was not aware of any incentives for getting further training, (4) that he had never received a policy manual and (5) that he had never been psychologically evaluated. Plaintiff never provided the court with the opportunity to evaluate this factual basis for additional discovery, either in a memorandum before the initial grant of the protective orders or in the motion for reconsideration. With the information before the court at the time, it did not abuse its discretion in denying the requested discovery.

### III. *Summary Judgment*

The district court granted summary judgment for Police Chief Fenton and the City of Springfield. In reviewing this decision, we must determine whether the evidence, viewed in the light most favorable to the plaintiff, shows that there is no genuine issue of material fact and that the defendants are entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir. 1985). Reversal is required "when issues of fact which were adequately raised before the district court need to be resolved before the legal issues in the case may be decided." *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 986 (1st Cir.1983).

■ To make out a case for municipal liability under 42 U.S.C. § 1983, the Supreme Court has repeatedly held that liability can be found only "where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris,* — U.S. —, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). Thus, a plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This requires that plaintiff demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm. *See, e.g., City of Canton,* 109 S.Ct. at 1203; *Oklahoma City v. Tuttle,* 471

U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

Santiago alleges two sources of municipal custom as a basis for liability. First, he argues that he presented sufficient deficiencies to establish a city policy of inadequate training of officers. In addition, he asserts that the city's tacit approval of widespread violations of constitutional rights, evidenced by a failure to discipline officers who commit violations, establishes a policy of encouraging unconstitutional conduct.

■ We consider first the policy of inadequate training. We agree with appellant that municipal liability is not precluded simply because the events occurred in a 'single' evening. *Bordanaro v. McLeod,* 871 F.2d 1151, 1157 (1st Cir.1989); *Kibbe v. City of Springfield,* 777 F.2d 801, 806 (1st Cir.1985). We conclude, however, that appellant's factual allegations fail to reach the high standard the Supreme Court has set out for a finding of liability for inadequate training of police officers.

■ In *City of Canton,* the Supreme Court held that a municipality may be held liable for a failure to train only when that failure "evidences a 'deliberate indifference' to the rights of the inhabitants.... Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." 109 S.Ct. at 1205 (quoting *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)).

Appellant has attempted to meet the deliberate indifference standard by offering three types of evidence. First, he claims that the only required training in constitutional issues for Springfield police officers is given during four hours of class at the police academy. Mackler testified that no financial incentives are given to encourage additional training. His testimony also indicated that Springfield officers received notice of changes in the law only during roll call or by posting on the bulletin board. Santiago claims that the four hours of

training is facially inadequate, and this claim is bolstered by Mackler's testimony in deposition that he does not recall these hours.

Second, Mackler testified in deposition that he had never received a policy manual. Finally, Mackler stated that he had never been required to submit to a psychiatric examination to determine his fitness for duty.

This offered evidence is insufficient to create a triable issue of fact as to whether the City of Springfield had a policy of inadequately training its police officers to handle situations like the one involved here. Provision of only four hours of training, without more, does not amount to a "conscious" policy to train inadequately. Appellant did not specify how this training, which accorded with the requirements of Mass.Gen.L. ch. 6, § 118,[2] was inadequate. Nor did appellant suggest that this training was inferior by the standards of the profession. *See Bordanaro*, 871 F.2d at 1160. In addition, the failure to offer financial incentives for further training does not amount to the type of discouragement of training that we addressed in *Bordanaro*. *Id.* Instead, the city introduced uncontradicted evidence that further training was encouraged.

Moreover, there is no indication that the City's method of posting and announcing changes in the law was inadequate. Nor do we think that the failure of a particular officer to receive a policy manual or psychological testing in light of a contrary general rule rises to the level of deliberate indifference. When looking at all of the asserted weaknesses together, we concur with the district court that no sufficient pattern emerges for a reasonable jury to find a policy of failure to train arising from deliberate indifference to citizens' constitutional rights.

■ We note an additional ground for finding this claim to be insufficient. In the usual case, factual allegations of a failure to train would support an inference that

failure to act in accord with proper training in that area was causally connected. For example, in this case, were the plaintiff claiming that Springfield officers received inadequate training in probable cause, his claimed arrest without probable cause would be connected by reasonable inference. But plaintiff claims that the inadequacy here is lack of training in constitutional law. Without more, this weakness in training does not support an inference that it was a lack of *awareness* of citizen constitutional rights that was the cause of his deprivation. We find that this claim, even if established, would not sufficiently implicate the policy as the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2038.

■ We next address the argument that there were constitutional violations so widespread and a failure to discipline so pervasive that they allow an "inference of supervisory encouragement, condonation or even acquiescence." *Voutour*, 761 F.2d at 820. Appellant claims that the city's failure to discipline Officer Mackler for both an earlier incident and the one underlying this action is sufficient evidence to defeat summary judgment on this issue. We disagree. The city and the department undisputedly had a policy of investigating complaints that expressly included the disciplining of officers in appropriate circumstances. In both of these instances the department conducted an investigation and hearing but decided that discipline was not appropriate. As we have indicated before, we cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*. *Kibbe*, 777 F.2d at 809 n. 7; *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir.1980). Appellant has not offered evidence of a failure to discipline sufficiently widespread to reflect a municipal policy.

For these reasons, we hold that summary judgment appropriately was granted to Fenton and the City of Springfield.

---

**2.** Mass.Gen.L. Ch. 6, § 118 provides for the approval of municipal police training schools and rules and regulations governing their courses of study by the Criminal Justice Training Council and the governor.

## IV. Directed Verdicts for Defendant Mackler

After the close of evidence, the magistrate directed verdicts for defendant Mackler on the state tort claims and federal and state violations of civil rights for false arrest and imprisonment, malicious prosecution, abuse of process, and conspiracy. Taking the facts in the light most favorable to the plaintiff, we find that we must reverse the grants of directed verdicts on all of the common law claims and on the federal and state civil rights claims involving false arrest and civil rights conspiracy. We will address in order the arrest, prosecution, abuse of process and conspiracy, separating as necessary the common law and constitutional claims and the defenses of immunity raised by the defendant.

## A. ARREST AND IMPRISONMENT

Our discussion must be in two stages. We must first determine whether a jury could reasonably find an arrest made in violation of the Fourth Amendment and Massachusetts common law. Having so determined, we next must address the issues of state and federal immunity.

### 1. Violations of state and federal law

Santiago alleged that he was illegally arrested and claimed that the arrest gave rise to claims for common law false arrest[3] and for violations of 42 U.S.C. § 1983 and Mass.Gen.L. ch. 12, § 11I based on his Fourth Amendment right to be free from an unreasonable seizure.

The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). If there was no probable cause for Santiago's arrest, he can seek redress under 42 U.S.C. § 1983 and under Mass.Gen.L. ch. 12, § 11I. *See Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822–23, 473 N.E.2d 1128 (1985). Massachusetts common law requires that an officer have "reasonable grounds" for

making an arrest. The requirement of "reasonable grounds" has been held to be "substantially overlapping" with the constitutional requirement of "probable cause." *Wagenmann v. Adams*, 829 F.2d 196 (1st Cir.1987); *Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 322, 268 N.E.2d 860 (1971). Thus, at the foundation of all the claims is the necessity that the arrest be supported by probable cause.

Additionally, Massachusetts law demands that several other requirements be met to make a lawful warrantless arrest. "A peace officer, in the absence of statute, may arrest without a warrant for a misdemeanor which (1) involves a breach of the peace, (2) is committed in the presence or view of the officer, and (3) is still continuing at the time of the arrest or only interrupted, so that the offence and the arrest form parts of one transaction." *Commonwealth v. Gorman*, 288 Mass. 294, 297, 192 N.E. 618 (1934) (citations omitted). *See also Wagenmann*, 829 F.2d at 207; Mass. Gen.L. ch. 231, § 94A (requiring an officer to "have probable cause and believe that a misdemeanor *for which he may make an arrest is being committed in his presence*" (emphasis added)).

Mackler correctly argues that the snowball incident was uncontested. He concludes that because, if recklessly done, throwing a snowball might constitute an offense under the statute, Santiago's arrest was proper. Although throwing a snowball might provide probable cause to arrest under the statute, it is also undisputed by the complaint, depositions and trial testimony, that the snowball had *nothing to do with the arrest*. Santiago was uncontestedly arrested for the offense of pushing or striking an officer and making loud and obscene noises. We reject Mackler's suggestion that he should be allowed to raise as a defense a pretextual basis for the arrest which he expressly disavows. *C.f. Wagenmann*, 829 F.2d at 206 (jury entitled to reject pretextual bases for arrest).

---

**3.** Under Massachusetts common law, it is a continuing tort for an officer to unlawfully arrest and detain a person. *Wax v. McGrath*, 255 Mass. 340, 151 N.E. 317 (1926).

■ Even, however, if the snowball incident had been the basis for the arrest, a directed verdict on the common law claim would not have been justified. The evidence showed a dispute over whether all of the requirements for a lawful warrantless arrest, other than probable cause, were met in this case. Although the snowball throwing might constitute a breach of the peace if it were recklessly done, there is a dispute over whether any officer actually witnessed the throw.[4] In addition, on plaintiff's version of the facts, a considerable time elapsed between the throwing of the snowball and the arrest. It was therefore disputed whether the alleged offense was continuing or whether the act and arrest could be said to form "one transaction." The jury, therefore, could have found that, under Massachusetts law, the officers could not legally arrest Santiago for the snowball incident, regardless of the presence of probable cause.

■ This leaves us with the original and only asserted basis for the arrest—that Santiago had pushed or struck an officer and had made loud and obscene noises. A determination of probable cause rests on "whether, at the moment the arrest was made, ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir.1987) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Here, the evidence would have permitted a jury to find that the officers lacked probable cause to arrest Santiago for allegedly abusive conduct. Santiago and his witnesses testified that he never pushed or struck Rivera nor used loud and obscene language.[5] The jurors could have believed plaintiff's version

of what occurred, and as a result could have found no probable cause for the arrest.

We therefore hold that the jury could have found a violation of Santiago's Fourth Amendment right to be free from unreasonable seizure of the person and his common law right to be free from false arrest and imprisonment.

2. *Immunity*

Mackler argues that the district court nevertheless properly granted him a directed verdict on the false arrest claims because he is entitled to immunity under both state and federal law.

a. State Immunity

■ Mackler asserts that he is immune from suit for the state tort of false arrest under Mass.Gen.L. ch. 263, § 3. That statute provides:

No action, except for use of excessive force, shall lie against any officer other than the arresting officer, by reason of the fact that, in good faith and in the performance of his duties, he participates in the arrest or imprisonment of any person believed to be guilty of a crime unless it can be shown that such officer in the performance of his duties took an active part in the arrest or imprisonment as aforesaid, either by ordering or directing that said arrest or imprisonment take place or be made, or by actually initiating the making and carrying out of said arrest and imprisonment.

Thus, if Mackler performed his duty in good faith and took no active part in the arrest, he would be exempt from suit under state tort law.

■ We cannot agree that this provision protects Officer Mackler if we take plaintiff's version of the facts as true. First, the jury could have found that Mackler was not acting in "good faith" when

---

**4.** In addition, the uncontroverted testimony was that the snowball throwing was not the reason for his arrest. See *supra* at p. 377.

**5.** We note that the lawful exercise of free speech, even if abusive or offensive, cannot be

the basis for an offense under the statute. *Commonwealth v. A Juvenile*, 368 Mass. 580, 334 N.E.2d 617 (1975); *Alegata v. Commonwealth*, 353 Mass. 287, 231 N.E.2d 201 (1967).

participating in the arrest of Santiago because there was no belief that Santiago was guilty of a crime. They could have found that Mackler participated in the arrest knowing that it was made solely because of Rivera's personal grudge or in order to cover up Rivera's and Mackler's use of excessive force.

In addition, the jury could have found that Mackler took an active part in the arrest and for that reason was not protected by the statute. Mackler conferred with Rivera, and the decision to arrest could have been made during this discussion. The evidence indicates that Mackler was present during the alleged confrontation and was the officer who grabbed Santiago, pulled him down the stairs, escorted him to the vehicle, and accompanied him to the station. If the jury were to accept this version of the facts, we think it would be difficult not to find that Mackler played an active role.

■ Mackler also argued that Mass. Gen.L. ch. 231, § 94A [6] provides a defense to an action for false arrest if there is probable cause to arrest the plaintiff for any crime, regardless of what acts actually motivated the arrest. He apparently attempts through this argument to justify Santiago's arrest by invoking the snowball incident, whether or not the snowball throw was the reason for the arrest. We previously have noted the factual dispute over whether the snowball incident furnished the basis for a valid arrest under Massachusetts law.[7]

Even if the jurors found that the incident met the requirements for a valid warrantless misdemeanor arrest, however, they also could have concluded that Santiago

was not in fact arrested for throwing the snowball. We therefore address Mackler's argument that if he had probable cause to arrest for the snowball incident, he was immune from suit for false arrest even if, as he testified, the arrest was not made for that reason.

Discussing Massachusetts law, the court in *Ware v. Garvey*, 139 F.Supp. 71 (D.Mass.1956), stated that:

> [I]f the arresting officer, in his own mind, acted upon a groundless basis, the arrest was invalid. The fact that he might have had another good reason but didn't intend to use the other good reason is no excuse for arresting for the wrong reason, if the wrong reason was the motivation. ·

*Ware*, 139 F.Supp. at 85. While the court in *Ware* does not explicitly discuss § 94A, the statute had been enacted some three years earlier.[8] The court's approach also has been considered the general rule. *See, e.g., McNeff v. Heider*, 216 Or. 583, 337 P.2d 819 (1959); *Donovan v. Guy*, 347 Mich. 457, 80 N.W.2d 190 (1956); *Harrer v. Montgomery Ward & Co.*, 124 Mont. 295, 221 P.2d 428 (1950); *Noe v. Meadows*, 229 Ky. 53, 16 S.W.2d 505 (1929).

Moreover, we believe that as a matter of statutory construction this view harmonizes with other provisions of Massachusetts law. The state constitution provides that "[n]o subject shall be held to answer for any crimes or offense, until the same is fully and plainly, *substantially* and formally, described to him...." Mass. Const. Part 1, Art. 12, cl. 1 (emphasis added). Under Mass.Gen.L. ch. 277, § 17 the plaintiff was entitled to "[a] plain and concise description of the *act* which constitutes the crime." (Emphasis added.) *See also* Mass.

---

**6.** Mass.Gen.L. ch. 231, § 94A provides:
  If a person authorized to make an arrest shall have probable cause to believe that a misdemeanor for which he may make an arrest is being committed in his presence, such probable cause shall be a defence in an action brought against him for false arrest or imprisonment.

**7.** As we have noted, § 94A grants immunity only where the officer has probable cause to

believe that "an offense for which he may make an arrest *is being committed in his presence.*" Therefore, if Mackler had no probable cause to believe that the Massachusetts requirements for an arrestable misdemeanor were met, he would not come within the protection of § 94A.

**8.** St.1953, c. 169, was approved on March 12, 1953.

R.Crim.P. 4(a).[9]

Taken together, we think that these provisions indicate a legislative intent to immunize an officer from suits for false arrest if the officer was acting in the good faith performance of his duties upon probable cause. We find, however, no such protection for an officer who, while having probable cause to arrest for one act (as we assume for the purposes of this argument), arrests for a different act for which he had no such cause. The Massachusetts statutes demonstrate legislative concern that defendants be given particular notice of their alleged wrongdoing, and it would be inconsistent to grant immunity to police officers who arrest individuals without concern for whether probable cause existed for the particular crime with which the individuals are charged.

■■■ Appellee's invocation of a Massachusetts common law immunity also fails. *Gildea v. Ellershaw*, 363 Mass. 800, 298 N.E.2d 847 (1973) established a common law qualified immunity for officers performing discretionary acts. However, *Gildea* expressly states:

> This rule is presently limited to public officers acting in good faith, without malice and without corruption.... The plaintiff has neither alleged nor produced evidence that the defendants acted in bad faith, maliciously or corruptly.

*Id.* at 820, 298 N.E.2d 847. Santiago has alleged malice and produced evidence from which the jury could have found that Mackler arrested him either to cover up the use of excessive force or to carry out a personal grudge held by Rivera. Therefore, if the jury had believed the plaintiff, there would be no common law immunity for the arrest.

We must conclude, therefore, that the state common law claim of false arrest should have gone to the jury.

9. Here, obviously, plaintiff received no such description of the snowball incident as the underlying act for which he was arrested.

10. In enacting the Massachusetts Civil Rights Act, the legislature also adopted federal quali-

### b. Civil Rights Immunity

■■■ In federal civil rights suits, government officials are entitled to qualified immunity for their discretionary acts. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1986).[10] To determine if an official is immune from liability for a civil rights violation, we must look at the "'objective reasonableness' of an official's conduct" and determine whether the conduct violated "clearly established ... constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. *See also Rodriguez v. Comas*, 875 F.2d 979 (1st Cir.1989).

The right to be free from unreasonable seizures of the person was well established long before 1983. *Wagenmann*, 829 F.2d at 209. In this particular case, the question of Mackler's immunity for false arrest turns on whether, without regard to his state of mind, there was probable cause or arguably was probable cause to make the arrest. *Hall v. Ochs*, 817 F.2d 920, 925 (1st Cir.1987); *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir.1985).

■■■ Mackler claims that he is entitled to qualified immunity on the civil rights claims at this juncture because the undisputed facts show that the officers had probable cause to arrest Santiago based on the snowball incident. The officers, however, as we have noted, consistently have maintained that they did not arrest Santiago for throwing the snowball. Rather, the disorderly conduct that furnished the basis for Santiago's arrest allegedly was his abusive and violent behavior toward the officers after he was stopped. It is obvious that qualified immunity based on an arrest for abusive conduct was inappropriate on a

fied immunity law. *Duarte v. Healy*, 405 Mass. 43, 46, 537 N.E.2d 1230 (1989). *See also Newman v. Commonwealth*, 884 F.2d 19 (1st Cir. 1989).

motion for directed verdict because the facts concerning Santiago's behavior were in dispute. *See Unwin v. Campbell*, 863 F.2d 124, 137 (1st Cir.1988) (declining to rule on qualified immunity because of factual dispute). If Santiago's version of the facts is believed, "there was no shred of probable cause" for the arrest. *Hall v. Ochs*, 817 F.2d at 925.

We therefore must address Mackler's claim that he is immune from suit for his arrest of Santiago for abusive behavior because he had arguable probable cause to arrest Santiago for the thrown snowball. We find no merit in this claim. The Supreme Court has noted that "the operation of [the qualified immunity] standard depends substantially upon the level of generality" with which the issue is framed. *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038. The Court concluded that the inquiry must turn on whether the defendants reasonably should have understood that *their specific actions* violated a clearly established constitutional right. *Id.* at 640, 107 S.Ct. at 3039; *See also Unwin*, 863 F.2d at 131. We think it inconsistent with this precedent for defendants to be granted immunity based on actions that they could have, but did not, take. Neither Mackler nor the other officers has ever contended that Santiago was arrested for throwing the snowball that hit Rivera's car. Mackler therefore is not entitled to qualified immunity based on the existence of probable cause to arrest Santiago for disorderly conduct in connection with the snowball incident.

Because the jury could have believed that the plaintiff's arrest was made without arguable probable cause, Mackler is not now entitled to qualified immunity on the civil rights claims for false arrest. The state and federal civil rights claims should have gone to the jury.

## B. MALICIOUS PROSECUTION

Santiago claims that he was prosecuted for disorderly conduct which never in fact occurred and that this prosecution was undertaken with malice. He asserts that the prosecution gave rise to claims under Massachusetts common law and 42 U.S.C. § 1983. We discuss those claims separately.

### 1. *State claim*

To recover for malicious prosecution under Massachusetts law, Santiago had to show four elements: 1) that the defendant initiated a criminal action against him; 2) that the criminal prosecution ended in Santiago's favor; 3) that there was no probable cause to initiate the criminal charge; and 4) that the defendant acted maliciously. *Foley v. Polaroid Corp.*, 400 Mass. 82, 508 N.E.2d 72 (1987); *Sullivan v. Choquette*, 420 F.2d 674, 676 (1st Cir.1969).

Mackler asserts that the first element was not proved because he did not institute the complaint and did not testify in juvenile court about the matter. However, Mackler was listed as an arresting officer in the arrest report and, if plaintiff's facts are believed, he took an active part in the arrest. Because Mass.Gen.L. ch. 263, § 3 applies only to actions for false arrest and imprisonment, *see supra* at p. 385, joint liability should be found under the general rule that "when the defendants act together, the law permits the injured party to treat all concerned in the injury jointly; and all are liable to the plaintiff in a total sum as damages." *Hall v. Ochs*, 817 F.2d at 926. A jury, therefore, could have found that Mackler was responsible for instituting the action against Santiago.

The second element of the malicious prosecution clearly was met because the criminal action against Santiago ended with a finding of "not delinquent." The third element—probable cause to initiate the criminal charge—does not depend upon there having been a lawful arrest. Lack of probable cause to arrest would not preclude a prosecution for the same offense. So, although a jury might find no probable cause to arrest Santiago on the grounds given by the defendants, it could still be lawful to prosecute him for being a disorderly person for the throwing of the snowball.

Defendants, however, do not claim that they prosecuted Santiago for the snowball incident. As noted above, their testimony and the complaint all allege the crime of disorderly conduct based on Santiago's behavior with the police officers some time after the snowball was thrown. Indeed, defendants specifically reject the snowball incident as a basis for their prosecution. Thus, because of the factual dispute over Santiago's behavior with the officers, the jury could have found that the charge against him was initiated without probable cause.

The jury also could have found that the fourth element was met. Santiago presented evidence supporting theories that the arrest was made to further a personal grudge or to cover up excessive force used by Mackler and Rivera. If the jury had believed Santiago, it reasonably could have found malice.

The state common law claim of malicious prosecution should therefore not have been dismissed.

### 2. *Federal claim*

It is unclear in this circuit whether the tort of malicious prosecution states a claim for denial of civil rights under § 1983. *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir.1980). In *Landrigan*, we declined to decide whether the filing of an allegedly baseless charge is actionable because we had not had the benefit of adequate briefing and argument on the issue. We found that because the allegations included the assertion that the plaintiff had been subjected to an independent constitutional violation (an arrest without probable cause), this separate constitutional violation was actionable under § 1983.

Here, as in *Landrigan*, appellant asserted an independent constitutional claim of arrest without probable cause. Because the parties have failed even to mention this issue in their briefs, we decline again to decide whether the filing of a baseless charge alone states an independent constitutional violation.

In any event, Mackler would be entitled to qualified immunity on this § 1983 claim.

Because the law was by no means clear in 1983 that malicious prosecution alone formed the basis for a claim of violation of plaintiff's civil rights, there was no clearly established constitutional counterpart to an action for malicious prosecution. *Carey v. City of Fall River*, 708 F.Supp. 431 (D.Mass.1988).

### C. ABUSE OF PROCESS

An action for abuse of process lies when an officer uses a lawful criminal process to accomplish an unlawful purpose. *Powers v. Leno*, 24 Mass.App.Ct. 381, 509 N.E.2d 46 (1987). It is a distinct claim from false arrest and malicious prosecution to the extent that it can be held to lie regardless of whether there was probable cause or whether the proceedings terminated in favor of the charged party. *Quaranto v. Silverman*, 345 Mass. 423, 426, 187 N.E.2d 859 (1963); *Carol v. Gillespie*, 14 Mass.App.Ct. 12, 436 N.E.2d 431 (1982).

A variety of unlawful purposes were alleged in this case. As we have indicated in our discussions of the state claims of false arrest and malicious prosecution, the evidence, if taken in the light most favorable to the plaintiff, could have supported these theories. We therefore find that the common law claim of abuse of process should have been allowed to go to the jury.

However, we hold that proof of abuse of process alone cannot support a finding of liability under § 1983. The basis of the action for abuse of process is the motivation of the officer in making the arrest. The Supreme Court implicitly has rejected this as a theory of liability by its analysis of qualified immunity. If there was an objective basis for the arrest or prosecution, an officer would be entitled to qualified immunity regardless of his subjective motivation. Thus, the Supreme Court has in effect held that abuse of process—as a claim separate from a claim that there was no probable cause to make the arrest or institute the prosecution—is not cognizable as a civil rights violation under § 1983. The directed verdicts on the civil rights claims of abuse of process were therefore appropriately granted.

## D. CIVIL RIGHTS CONSPIRACY

Appellant claimed that officers Rivera, Mackler, and Carelock conspired to violate his federally protected rights under 42 U.S.C. § 1983. A civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages.'" *Hampton v. Hanrahan*, 600 F.2d 600, 620–21 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (quoting *Rotermund v. United States Steel Corp.*, 474 F.2d 1139, 1145 (8th Cir.1973)). "[T]o be actionable under section 1983 the plaintiff has to prove that 'there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws.'" *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir.1988) (quoting *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir.1980)).

The appellant alleged that Mackler was a party to a conspiracy to falsely arrest and imprison him, to maliciously prosecute him and to deprive him of his rights by abuse of process. Because qualified immunity would protect the officers under the malicious prosecution claim and the abuse of process claim cannot lie, directed verdicts were appropriately granted. As we have said, however, the jury could have believed facts that would have supported a finding that Santiago's arrest was made without probable cause. Such an arrest would be an actual violation of Santiago's Fourth Amendment rights.

The remaining question, then, is whether there was sufficient evidence to permit a reasonable jury finding "without speculation and conjecture," *Aubin v. Fudala*, 782 F.2d 280, 286 (1st Cir.1983) (quoting *Carlson v. American Safety Equipment Corp.*, 528 F.2d 384, 386 (1st Cir.1976); *Schneider v. Chrysler Motor Corp.*, 401 F.2d 549, 555 (8th Cir.1968)), that the officers conspired. Circumstantial evidence is sufficient to prove a conspiracy. *Earle*, 850 F.2d at 845.

We believe that there was sufficient circumstantial evidence for a reasonable jury to have found a conspiracy among the officers. Plaintiff and his witnesses testified to discussions between the officers. If the jury believed that there was no probable cause for the arrest and that the officers' story was fabricated, a reasonable jury could have believed that a conspiracy existed to arrest Santiago illegally. The court, therefore, erred in directing a verdict on the conspiracy claim.

### V. Conclusion

We hold that the district court did not abuse its discretion in granting the defendants' motions for protective orders. We affirm as well the grant of summary judgment to the city and Police Chief Fenton. We reverse, however, the grants of directed verdicts for Officer Mackler on the state tort claims of false arrest and imprisonment, malicious prosecution and abuse of process, and the state and federal civil rights claims for illegal arrest and civil rights conspiracy. Plaintiff is entitled to a new trial on those claims.

*Affirmed in part, reversed in part, and remanded for further action in accordance with this opinion. No costs.*