USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2080

 RICHARD N. SHEEHY, SHIRLEY SHEEHY, and LEAH SHEEHY,

 Plaintiffs, Appellants,

 v.

 TOWN OF PLYMOUTH and RITA QUINN,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert B. Collings, U.S. Magistrate Judge]

 Before

 Stahl, Circuit Judge,
 Magill, Senior Circuit Judge,*
 and Lipez, Circuit Judge
 
 
 
 
 Robert S. Wolfe for appellants.
 Robert L. Kirby, Jr., with whom Robert P. Sherman and David B.
Mack were on brief for appellees.

September 8, 1999

 
 *Of the Eighth Circuit, sitting by designation. LIPEZ, Circuit Judge. This case requires us to decide
whether a police officer sued for making an allegedly illegal
arrest can invoke the "related crimes" defense in asserting
qualified immunity. The defense, adopted by a number of other
circuits, provides "that even where there is no probable cause to
arrest the plaintiff for the crime charged, proof of probable cause
to arrest the plaintiff for a related offense is also a defense
which may entitle the arresting officer to qualified immunity."
Avery v. King, 110 F.3d 12, 14 (6th Cir. 1997). The district court
adopted the related crimes defense and granted summary judgment for
the defendant police officer. Although we conclude that a police
officer is entitled to invoke the related crimes defense, we must
vacate the district court's entry of summary judgment. There
exists a genuine issue of material fact as to whether the 
defendant police officer, Rita Quinn, clearly did not have probable
cause to arrest plaintiff Richard Sheehy for disorderly conduct,
the crime cited by the officer as the basis for the arrest at the
scene. We further conclude that the related crimes defense should
not apply to assault and battery with a dangerous weapon, the crime
charged at the police station after the arrest. I.
 This case stems from an altercation between two neighbors
in the town of Plymouth, Massachusetts. Following a long and
contentious relationship with Warren Baker, Richard Sheehy got into
an argument with Baker on Baker's property. Baker punched Sheehy in
the eye and, in an effort to stop Baker from hitting him again,
Sheehy grabbed Baker's shoulder. Sheehy lost his balance and fell
on top of Baker. Baker started yelling for someone to call the
police.
 A number of officers arrived at the scene. They were
familiar with Baker, having been called to Baker's residence on a
number of prior occasions, and they did not take the situation very
seriously. A sergeant at the scene questioned Sheehy about the
disturbance and asked him if he was going to file a complaint. 
Sheehy informed the sergeant that he would not be filing a
complaint.
 Officer Quinn then arrived at the scene. She first went
to Baker's house where Baker told her that Sheehy had assaulted and
kicked him. Officer Quinn had been to Baker's house before to
investigate disturbances, and had always found him to be truthful.
Although she could smell alcohol on his breath, she did not think
he was drunk. Officer Quinn then went across the street to
Sheehy's driveway where Sheehy was washing his boat. There were 
four bystanders in the driveway, and one of them was shouting and
visibly upset. Officer Quinn attempted to question Sheehy, but he
refused to respond, telling Officer Quinn that he had already given
his name and address to the sergeant. She told him that "I'm the
investigating officer now, and I am not going to put up with this
. . . you know, either you give me identification or I arrest you." 
Sheehy put his hands out and said, "Then just arrest me." Officer
Quinn said, "You're under arrest." Sheehy asked what he was being
arrested for and Officer Quinn responded: "For not giving me your
name." Sheehy, a retired state trooper, told her she did not have
the authority to arrest him for failure to provide his name. 
Officer Quinn's partner then told Sheehy that he was being arrested
for being a disorderly person. Sheehy asked how he could be a
disorderly person in his own yard and added, "What constitutes
being disorderly, I haven't opened my mouth." Officer Quinn's
partner responded, "Failure to give your name." 
 Sheehy was handcuffed and taken to the police station
where he was charged with assault and battery with a dangerous
weapon and being a disorderly person. Sheehy pled not guilty at
his arraignment. At a pretrial conference, the district attorney
refused to prosecute and the charges were dismissed.
 Sheehy then filed suit in Massachusetts state court
against Officer Quinn and the town of Plymouth, pursuant inter alia
to 42 U.S.C. 1983, alleging that his arrest was in violation of
the Fourth Amendment because Officer Quinn did not have probable
cause to arrest him for disorderly conduct or assault and battery
with a dangerous weapon. The case was subsequently removed to the
federal district court for the District of Massachusetts. After
removal, Officer Quinn filed a motion for summary judgment,
claiming that she was entitled to qualified immunity. The district
court agreed, adopting the related crimes defense. The district
court concluded that Officer Quinn had probable cause to arrest
Sheehy for simple assault and battery, and further concluded that
assault and battery and the crime charged at the police station
(i.e., assault and battery with a dangerous weapon) were clearly
related. The district court entered a summary judgment against
Sheehy on his one federal claim under 42 U.S.C. 1983 and remanded
the remaining state law claims for disposition in the state court.
Sheehy now appeals. 
 II.
 The district court's entry of summary judgment is
reviewed de novo. See Vargas-Badillo v. Diaz-Torres, 114 F.3d 3,
5 (1st Cir. 1997). We consider whether "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue of material fact and that the moving party is entitled to a
judgment as a matter of law." Fed. R. Civ. P. 56(c). We review
the record in a light most favorable to the party opposing the
summary judgment and we will indulge in all reasonable inferences
in that party's favor. See Rivera v. Murphy, 979 F.2d 259, 261
(1st Cir. 1992). Where there is no dispute over the underlying
material facts, "a defendant's entitlement to qualified immunity is
a question of law and is reserved for plenary review by this
court." Id.
 Generally, government officials performing discretionary
functions (such as arrests) are shielded from civil damages so long
as their conduct "does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known." Vargas-Badillo, 114 F.3d at 5 (quoting Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982)). In evaluating the officer's
conduct in question, we do not focus on the "official's subjective
state of mind, such as bad faith or malicious intention . . . ." 
Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985). "The Harlow
standard requires that we make an objective analysis of the
reasonableness of conduct in light of the facts actually known to
the officer and not consider the individual officer's subjective
assessment of those facts. Nor are actual motives for conduct to
be considered in evaluating a qualified immunity defense." Id. at
6. 
 Where an arrest is "challenged as unsupported by 
probable cause [it] is deemed 'objectively reasonable' unless
'there clearly was no probable cause at the time the arrest was
made.'" Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1993) (quoting
Floyd, 765 F.2d at 5). Probable cause to arrest exists where "the
facts and circumstances within [the police officer's] knowledge and
of which [she] had reasonably trustworthy information were
sufficient to warrant a prudent [person] in believing that the
[arrestee] had committed or was committing an offense." Rivera,
979 F.2d at 263 (quoting United States v. Figueroa, 818 F.2d 1020,
1023 (1st Cir. 1987)). "Probable cause is to be determined based on
'the collective knowledge and information of all the officers
involved.'" See United States v. Bizier, 111 F.3d 214, 217 (1st
Cir. 1997) (quoting United States v. Paradis, 802 F.2d 553, 557
(1st Cir. 1986)). 
 Several circuits have held that "even where there is no
probable cause to arrest the plaintiff for the crime charged, proof
of probable cause to arrest the plaintiff for a related offense is
also a defense which may entitle the arresting officer to qualified
immunity." Avery v. King, 110 F.3d 12, 14 (6th Cir. 1997); see
Kelley v. Myler, 149 F.3d 641, 647-48 (7th Cir. 1998) ("[E]ven if
probable cause does not exist for the crime charged, proof of
probable cause to arrest the plaintiff on a closely related charge
is also a defense."); United States v. Rambo, 789 F.2d 1289, 1294
(8th Cir. 1986) ("Where a defendant is arrested for the wrong
offense, the arrest is still valid if probable cause existed to
arrest the defendant for a closely related offense."). The related
crimes defense asks "whether the conduct that served as the basis
for the charge for which there was no probable cause could, in the
eyes of a similarly situated reasonable officer, also have served
as the basis for a charge for which there was probable cause."
Trejo v. Perez, 693 F.2d 482, 486 (5th Cir. 1982). In Trejo,
although the court agreed that the police officer did not have
probable cause to arrest the plaintiff for disorderly conduct for
the plaintiff's refusal to identify himself to the police officer,
that same conduct could have supported an arrest for violating a
statute that required a person to respond to a request for
identification. Therefore, a jury should have been able to decide
whether a reasonable officer would have believed he had probable
cause to arrest the plaintiff for a crime related to the crime
offered as the justification for the arrest. See id.
 Our reading of the cases suggests that "relatedness" has
two requirements. First, the crime with which the arrestee is
charged and the crime offered to the court as a justification for
the arrest must relate to the same conduct. Second, as a corollary
of this first requirement, the two crimes must share similar
elements or be directed generally at prohibiting the same type of
conduct. See generally Avery, 110 F.3d at 14-15; Trejo, 693 F.2d
at 485-86. These requirements prevent the "ex post facto
extrapolations of all crimes that might have been charged on a
given set of facts at the moment of the arrest . . . ." Richardson
v. Bonds, 860 F.2d 1427, 1431 (7th Cir. 1988). The related crimes
defense, thus understood, "allows the arresting officer to choose
which crime she will charge without having to charge every single
offense sustainable on the facts, and yet does not open the door to
the extrapolation of offenses in an effort to justify a sham
arrest." Biddle v. Martin, 992 F.2d 673, 677 (7th Cir. 1993)
(internal quotation marks omitted).
 The related crimes defense is consistent with the
teachings of Harlow v. Fitzgerald, 457 U.S. 800, 815-19 (1982),
which rejected an inquiry into a government official's subjective
motivations and intentions and defined the limits of qualified
immunity in objective terms. An officer's erroneous legal
description of the basis for an arrest should not expose the
officer to liability if another officer would have concluded that
there was probable cause to arrest for a related offense on the
basis of the same conduct. We agree that courts should not "make
constitutional questions turn on the term chosen by police officers
to describe their activity - officers who are accustomed to the
vernacular of the police station and unschooled in the accepted
constitutional vocabulary . . . ." Ralph v. Pepersack, 335 F.2d
128, 134 (4th Cir. 1964). Instead, we should consider whether the
conduct in question would allow a reasonable officer to conclude
that probable cause existed to arrest for the related crime offered
as justification. See Biddle, 992 F.2d at 676-77 (collecting
cases). We therefore adopt the related crimes defense in this
circuit.
 In the usual case involving the related crimes defense,
the crime or crimes formally charged are identical to those cited
by the officer at the time of the arrest. Thus, there is usually
no need to ask whether the related crimes analysis should focus on
the conduct underlying the crime cited by the officer at the time
of the arrest or, instead, the conduct underlying the crime cited
a short time later at the police station. The crimes are the same. 
Here that question must be asked because Officer Quinn said at the
scene that she was arresting Sheehy for being a disorderly person
in his interaction with her, but later at the police station he was
also charged with assault and battery with a dangerous weapon
because of his altercation with Baker. The district court
concluded that it was appropriate to analyze the conduct underlying
the assault and battery with a dangerous weapon charge lodged at
the police station in applying the related crimes defense. We
disagree.
 When Officer Quinn arrived at the scene, she first
interviewed Baker. He informed Officer Quinn that Sheehy had
assaulted him. Officer Quinn then went across the street to
continue her investigation in Sheehy's driveway. When Sheehy
refused to cooperate, Officer Quinn arrested him for disorderly
conduct on the basis of his conduct in the driveway. The record
makes clear that Sheehy's interaction with Officer Quinn was the
sole basis for the arrest. It was only later, at the police
station, that Officer Quinn also charged Sheehy with both
disorderly conduct and assault and battery with a dangerous weapon. 
In other words, the additional charge at the police station had
nothing to do with the conduct for which Sheehy was actually
arrested -- his conduct in the driveway. The arrest charge and the
charge lodged at the police station pertained to distinct events
involving Sheehy's conduct with different people.
 Although we are mindful that qualified immunity "gives
ample room for mistaken judgments," Rivera, 979 F.2d at 263,
Officer Quinn did not merely give an erroneous legal description of
the conduct she was witnessing or overlook an offense applicable to
that conduct. Instead, following the arrest, Officer Quinn relied
at the police station on prior conduct of Sheehy that unmistakably
did not serve as the basis for the challenged arrest. Allowing
such reliance would "open the door to the extrapolation of offenses
in an effort to justify a sham arrest." Biddle, 992 F.2d at 677
(internal quotation marks omitted). We will not permit it. 
 Our decision in Santiago v. Fenton, 891 F.2d 373 (1st
Cir. 1989), supports our conclusion that Officer Quinn may not
offer the later charge at the police station to support her
qualified immunity defense. In Santiago, the plaintiff was engaged
in a snowball fight with his friends when he hit an unmarked police
car. The plaintiff and his friends ran off. The officer followed
the boys briefly, but then gave up. See id. at 377. Later, the
police officer was in a nearby apartment complex and overheard the
boys discussing the incident. See id. At that point, the officer
grabbed the plaintiff and an altercation ensued between the
plaintiff and several officers. The plaintiff pushed the officers
and made loud and obscene noises. The officers placed the
plaintiff under arrest and he was transported to the police
station, where he was charged with a misdemeanor offense of being
a disorderly person for allegedly shouting at the officers. See
id. at 377, 383.
 Santiago sued the officers pursuant to 42 U.S.C. 1983. 
The officers argued that they were entitled to qualified immunity
because, even in the absence of probable cause for the disorderly
conduct charge relating to the incident in the apartment complex,
they had probable cause to arrest for the earlier snowball
incident. See id. at 383. Although we did not discuss the related
crimes defense in Santiago, we rejected the officers' claim, noting
that the officers had unambiguously testified that the snowball
incident had nothing to do with the arrest, and that the plaintiff
was arrested for striking and pushing the officers in the apartment
building. See id. at 383. We would not permit the officers to
validate the arrest retroactively based on earlier conduct that
unmistakably did not serve as the basis for the challenged arrest. 
We have made the same judgment in this case.
 In its grant of summary judgment for Officer Quinn, the
district court questioned whether our analysis of qualified
immunity in Santiago v. Fenton could be reconciled with the related
crimes defense. We see no conflict. Contrary to the suggestion of
the district court, our reliance on the testimony of the officers
about the basis for the arrest in Santiago does not implicate the
officers' subjective motivations for arresting the plaintiff, nor
does it condition the availability of the immunity defense on the
legal correctness of the criminal charge articulated by the
officers in describing the conduct that prompted their arrest
decision. We used the statements of the officers in Santiago about
the basis for the arrest as objective indicators of the conduct
underlying the arrest in order to understand which of two discrete
incidents prompted the arrest. Without such an inquiry, we could
not have known which facts to consider in determining whether the
arrest was made pursuant to probable cause. We have used the
statements of Officer Quinn and her partner about the basis for the
arrest of Sheehy in the same fashion. 
 III.
 The district court used the assault and battery with a
dangerous weapon charge, lodged at the police station, as the basis
for its conclusion that Officer Quinn had probable cause to arrest
Sheehy for the related offense of assault and battery. Thus the
court did not consider whether Officer Quinn clearly did not have
probable cause to arrest Sheehy for disorderly conduct, the stated
basis for the arrest. Given our rejection of the court's
application of the related crimes defense to the charge lodged at
the police station, we must consider whether Officer Quinn had
probable cause to arrest Sheehy for the crime of disorderly
conduct.
 Sheehy was charged with a violation of Mass. Gen. Laws
ch. 272, 53, which makes it a crime to be an "idle and disorderly
person[]." A person is disorderly under the statute "if, with
purpose to cause public inconvenience, annoyance or alarm, or
recklessly creating a risk thereof, he: (a) engages in fighting or
threatening, or in violent or tumultuous behavior . . . or (c)
creates a hazardous or physically offensive condition by any act
which serves no legitimate purpose of the actor." Commonwealth v.
Feigenbaum, 536 N.E.2d 325, 327 (Mass. 1989) (quoting Alegata v.
Commonwealth, 231 N.E.2d 201, 211 (Mass. 1967)). The conduct to
which the statute applies has been described with some specificity:
 [T]he type of conduct which the disorderly
 person provision of 53 reaches is that
 conduct which by its very nature involves the
 use of physical force or violence or any
 threat to use such force or violence if that
 threat is objectively possible of immediate
 execution. Also covered is "tumultuous
 behavior," which while perhaps not physically
 violent, may nevertheless be characterized as
 involving riotous commotion and excessively
 unreasonable noise so as to constitute a
 public nuisance. Conduct which creates a
 condition of physical menace to others is also
 reached . . . .

Commonwealth v. A Juvenile, 334 N.E.2d 617, 628 (Mass. 1975)
(citations omitted). That description permits no argument that a 
refusal to give one's name to a police officer is disorderly
conduct.
 When a defendant moves for summary judgment on qualified
immunity grounds, "we must credit the plaintiff's version of
defendants' actions to the extent that plaintiff has appropriately
supported his version." Amsden v. Moran, 904 F.2d 748, 752-53 (1st
Cir. 1990). In Sheehy's deposition he explained that Officer Quinn
asked him his name, but he refused to tell her since he had already
given another officer the information. He testified that she once
again demanded that Sheehy provide her with his name or she would
place him under arrest. Sheehy refused and put out his hands.
Officer Quinn arrested him. On Sheehy's version of the facts, he
demonstrated no conduct that could be considered "disorderly" he
did not act with or threaten force or violence, his behavior was
not "tumultuous," and he did not create a physical menace to
others.
 Therefore, on the basis of this record, Officer Quinn
should not have been granted summary judgment. If a jury were to
believe Sheehy's version of events, it reasonably could find that
Officer Quinn clearly did not have probable cause to arrest him for
disorderly conduct. According to Officer Quinn, however, Sheehy
not only refused to give his name, but also paced around in an
agitated fashion when she tried to talk to him, displayed
aggressive body language, and advanced toward her "in a very
threatening manner." A jury believing that version of the facts
could reasonably conclude that it was not clear that Officer Quinn
lacked probable cause to arrest Sheehy for disorderly conduct. We
must therefore vacate the judgment of the district court and
remand.
 Judgment vacated. Remanded for further proceedings.